UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| WILLIAM KOCH,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW SAUL, Commissioner of the<br>Social Security Administration,<br><br>    Defendant. | CAUSE NO.: 4:19-CV-103-TLS |

**OPINION AND ORDER**

The Plaintiff William Koch seeks review of the final decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits and supplemental security income. The Plaintiff argues that the Administrative Law Judge (ALJ) erred in the RFC assessment; erred in failing to properly consider medical opinion evidence; and failed to consider his work history as part of the subjective symptom analysis. For the reasons set forth below, the Court finds that the ALJ erred in evaluating medical opinion evidence, and remand is required for further proceedings.

**PROCEDURAL BACKGROUND**

On August 25, 2016, the Plaintiff filed applications for a period of disability insurance benefits and for supplemental security income, alleging disability beginning on April 24. 2016. AR 43, 244, 254, ECF No. 6. The claims were denied initially and on reconsideration. *Id*. 110-11, 128-29. The Plaintiff requested a hearing, which was held before the ALJ on April 3, 2018. *Id*. 62-93, 168-69. On August 23, 2018, the ALJ issued a written decision and found the Plaintiff not disabled. *Id.* 43-56. On November 5, 2019, the Plaintiff filed his Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision. The Plaintiff filed an opening

brief [ECF No. 9], and the Commissioner filed a response brief [ECF No. 10], and the Plaintiff did not file a reply brief.

**THE ALJ'S DECISION**

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b) 416.920(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since April 24, 2016, the alleged onset date. AR 45.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ determined that the Plaintiff has the severe impairments of lumbar radiculopathy and degenerative disc disease, status post fusion; and obstructive sleep apnea. AR 46.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. §§

404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that he considered Listing 1.04. AR 47–48.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. §§ 404.1520(e), 416.920(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs, balance, kneel and crawl. The claimant can occasionally climb ladders, ropes, or scaffolds, stoop and crouch. The claimant requires the use of a cane for ambulation.

AR 48.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f). In this case, the ALJ noted that the Plaintiff is unable to perform his past work in general hardware sales, industrial truck operator, finish carpenter, or materials handler. AR 52.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" in the national economy given the RFC and the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because the

Plaintiff can perform significant jobs in the national economy, such as a cashier, office helper, or inspector and hand packager. AR 54. The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 416.912.

The Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1-6. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision if it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex*

*rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (quotations omitted); *see also Moore*, 743 F.3d at 1121 ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

The Plaintiff raises multiple arguments, but the Court need only address one that compels remand. The ALJ erred in failing to properly analyze medical opinion evidence related to Plaintiff's mental impairments.

### A. Medical Opinion Evidence

Plaintiff asserts that the ALJ failed to properly analyze the treating opinions of his neurologist and mental health clinician. Specifically, Plaintiff asserts that the ALJ failed to consider the consistency of the two opinions, and that the ALJ mischaracterized treatment notes in finding the opinions to be inconsistent with the medical record.

An ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). The treating physician rule, applicable

5

in this case,[1] provides that the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); *see Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (citing 20 C.F.R. § 404.1527(c)(2); *Reinaas v. Saul*, 953 F.3d 461, 465 (7th Cir. 2020)). If the treating physician's opinion is not given controlling weight, the Commissioner must apply the factors set forth in the regulations to determine what other weight to give the opinion. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); *see Karr*, 989 F.3d at 512 ("[T]he ALJ failed to expressly analyze Dr. Canavati's statement within the multifactor framework delineated in 20 C.F.R. § 404.1527(c)(2). The ALJ should have done so." (citing *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018))).

The factors the ALJ must consider are: whether there is an examining relationship; whether there is a treatment relationship, and if so, the length of the relationship, the frequency of examination, and the nature and extent of the relationship; whether the opinion is supported by relevant evidence and by explanations from the source; the consistency of the opinion with the record as a whole; whether the opinion was offered by a specialist about a medical issue related to his or her area of specialty; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). The Commissioner "must offer good reasons for discounting the opinion of a treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (citing *Moore*, 743 F.3d at 1127); *Reinaas*, 953 F.3d at 465 (noting that the ALJ concluded that the treating physician's opinion did not deserve controlling weight because it was based only

---

[1] On January 18, 2017 the Commissioner published new regulations, "Revisions to Rules Regarding the Evaluation of Medical Evidence," which addressed 20 C.F.R. §§ 404.1527, 416.927. However, the new regulations only apply to claims filed on or after March 27, 2017, and the claims in this case were filed in 2016.

on the claimant's subjective report of symptoms and because it was "inconsistent" with the record but finding that the ALJ failed to adequately support the conclusions (citing *Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016)); *see also Smith v. Berryhill*, No. 3:17-cv-261, 2018 WL 4357129, at *6 (N.D. Ind. Sept. 13, 2018) (stating that the Commissioner failed to "identify specific inconsistencies" to allow the court to determine how the opinion is inconsistent).

Plaintiff asserts that the ALJ erred in assessing the opinions of both Dr. Khaled Hammoud, his neurologist, and Ms. O'Leary, his therapist. Dr. Hammoud provided a medical source statement on February 6, 2018. Dr. Hammoud noted that Plaintiff exhibited anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking. AR 703. Dr. Hammoud also noted that Plaintiff scored a 17 on the Epworth Sleepiness Scale. *Id.* Dr. Hammoud opined that Plaintiff is markedly limited in his ability to concentrate, persist, or maintain pace, as his "fatigue and pain limit[] concentration," and his pain and fatigue make him incapable of completing tasks. *Id.* 704. He also opined that Plaintiff is markedly limited in his ability to adapt or manage oneself, as his depressive state is "currently uncontrolled causing inability for self management and care." *Id.* 704-05. Dr. Hammoud further opined that Plaintiff is moderately limited in both short term and long term memory, as his "depressive state is interfering with memory retention and recall." *Id.* 705. Dr. Hammoud opined that Plaintiff is to maintain attention and concentration for less than five minutes before needing redirection, and that he is usable to maintain regular attendance and be punctual. *Id.* 705. He opined that Plaintiff is unable to work appropriately with his co-workers, supervisors, or the general public, and that Plaintiff can maintain socially appropriate behavior and respond appropriately to changes in work settings sometimes, but not consistently. *Id.* 706. Finally, Dr. Hammoud opined that Plaintiff would be

7

off task for more than 25% of the workday and would miss more than four days per month as a result of his impairments and treatment. *Id.* 706.

The ALJ gave Dr. Hammoud's opinion little weight, finding that "the extreme limitations assessed are not supported by Dr. Hammoud's office treatment records, which document negative findings from a psychiatric standpoint, as the claimant was consistently alert and oriented and demonstrated normal affect and mood on examinations." AR 51. The ALJ also noted that mental progress notes documented Plaintiff as being consistently pleasant, cooperative, alert, oriented, demonstrating an adequate fund of information, intact memory processes, and good insight and judgment. *Id.* 51. Finally, the ALJ found that Dr. Hammoud's opinions concerning Plaintiff's time off task and work attendance are "conclusory and made without explanation." *Id.* 51.

Ms. O'Leary, LCSW, Plaintiff's therapist, provided a similar opinion that was countersigned by Dr. Gerald Maesaka on February 22, 2018. Ms. O'Leary noted that she began treating Plaintiff in January 2017. AR 707. Ms. O'Leary opined that Plaintiff has anxiety limited to compulsions, noting that he demands cleanliness to perfection at times. *Id.* 707. Ms. O'Leary found Plaintiff to be forgetful with a lack of focus at times. *Id.* 708. She opined that Plaintiff is mildly limited in his ability to understand, remember, or apply information. She opined that Plaintiff is moderately limited in his ability to interact with others, noting that his pain affects his thought process, and he is prone to anger. *Id.* 709. Ms. O'Leary opined that Plaintiff is markedly limited in his ability to concentrate, persist, or maintain pace, as his depression and physical limitations "combine to limit all three." *Id.* 709. She also opined that Plaintiff is markedly limited in his ability to adapt or manage oneself, noting that his pain and depression limit him. *Id.* 709.

Ms. O'Leary also opined that Plaintiff is moderately limited in his short term memory, and mildly limited in long term memory, noting that his depression and pain cloud his memory. AR 710. She further opined that Plaintiff is markedly limited in his ability to remember locations and work-like procedures, mildly limited in his ability to understand and carry out very short and simple instructions, and mildly limited in his ability to understand and carry out detailed but uninvolved written or oral instructions. *Id.* 710. Ms. O'Leary opined that Plaintiff's ability to maintain attention and concentration would depend on depression and pain, but she opined that he could maintain attention and concentration for less than five minutes before needing redirection. *Id.* 710. She opined that Plaintiff could not work appropriately with the general public, his co-workers, and his supervisors. She noted that "it cannot be understated that his constant high pain [levels and] depression limit[] his ability to interact with others." *Id.* 711. Ms. O'Leary opined that he could sometimes, but not consistently, maintain socially appropriate behavior and respond appropriately to changes in work settings. *Id.* 711. Finally, she opined that Plaintiff would be off task more than 25% of the workday and would miss more than four days a month as a result of his impairments and treatment. *Id.* 711.

The ALJ assigned this opinion little weight, finding that the "extreme limitations are not supported by mental health progress notes, which document the claimant was consistently pleasant, cooperative, alert, oriented, and demonstrated an adequate fund of information, intact memory processes, and good insight/judgment on mental status examinations." AR 52. The ALJ also found that Dr. Hammoud's office treatment records note that Plaintiff was consistently alert and oriented and demonstrated normal affect and mood on examinations. *Id.* Finally, the ALJ found that Ms. O'Leary's statements concerning Plaintiff's time off task and work attendance "are conclusory and made without explanation." *Id.*

The ALJ used similar language and evidence to assign both opinions limited weight. However, the ALJ failed to consider how the opinions are consistent with each other, and the ALJ cherry-picked evidence from the treatment notes that support his opinion without considering evidence to the contrary. As an initial matter, the ALJ cites to a number of treatment notes that find Plaintiff was consistently pleasant, cooperative, alert, oriented, and demonstrated an adequate fund of information, intact memory processes, and good insight/judgment on mental status examinations. However, the first page of every counseling treatment note is a mental status assessment that remains the same across every treatment note. AR 508, 627, 630, 638, 644, 647, 653, 659, 665. Even on these repeated pages, the ALJ ignores the fact that Plaintiff's mood was described as anxious, depressed, and pleasant. *Id.* The ALJ acknowledged that Plaintiff was described as pleasant, but he ignored that his mood was also consistently depressed and anxious. The mental status examination was not the entire treatment note, however, and the ALJ did not discuss the narrative portions of the treatment note.

The narrative discussions from each session provide more insight into Plaintiff's mental health treatment and his symptoms. On August 3, 2017, Plaintiff was withdrawn and in pain. AR 663. He admitted to feelings of uselessness, feeling alone, grief, and sadness. *Id.* Plaintiff also discussed struggles with his family at home. *Id.* Plaintiff's struggles with interacting with his family are a frequent discussion of the therapist's narrative notes. *Id.* 509, 627, 629, 645, 648, 654, 657. Ms. O'Leary discussed Plaintiff's cleaning as a compulsion, and also discussed practicing "nonjudgmental reaction[s]" to his family. *Id.* 631, 639. Ms. O'Leary also noted that Plaintiff was not taking responsibility for his choices. *Id.* 639. Plaintiff also wept during a TED talks video during therapy. *Id.* 651. In November 2017, Plaintiff stated that he felt he was on the same path as his father, who was on disability prior to committing suicide at the age of 53. *Id.*

10

642. Plaintiff stated that he doesn't feel wanted, and the therapist noted that he "continues to be very deficit focused." *Id.* In January 2018, Plaintiff stated he "does not feel understood by his family or doctors" and was isolating himself. *Id.* 628. Ms. O'Leary and Plaintiff worked together to find solutions to accomplish small goals. However, Plaintiff rejected these solutions and was confronted on his lack of willingness to try the proffered solutions. *Id.*

The ALJ focused on an unchanging checklist assessment from the first page of each treatment note while ignoring the narrative discussion. The narrative discussion provides evidence that supports both Ms. O'Leary's and Dr. Hammoud's opinions. Ms. O'Leary's treatment notes show Plaintiff's frequent struggles with interacting with his family, which supports the opinion that he is moderately limited in his ability to interact with others. Ms. O'Leary's treatment notes specifically state that Plaintiff is prone to anger, which supports her treating opinion. *Id.* 709. The ALJ erred in failing to consider the narrative portions of these treatment notes, and instead relied on an unchanging assessment in giving these opinions little weight.

Dr. Hammoud's opinion and Ms. O'Leary's opinions also support each other. Both treating clinicians opined that Plaintiff would be markedly limited in his ability to concentrate, persist, or maintain pace, and both opinions note that this is a result of his physical limitations in combination with his mental limitations. AR 704, 709. Both also opined that he is markedly limited in his ability to adapt or manage oneself, and both noted that his depression caused difficulties in self-management. *Id.* 705, 710. Both opined that Plaintiff would be unable to work appropriately with the general public, co-workers, or supervisors. *Id.* 706, 711-12. And both opinions found that Plaintiff's symptoms are severe enough to interfered with his attention and concentration for over 25% of the workday, and that he would miss more than 4 days per month.

*Id.* 706, 711. While the ALJ used the same treatment notes and the same reasoning to reject both opinions, he never discussed or analyzed how the opinions were consistent with each other as required by 20 C.F.R. §§ 404.1527(c), 416.927(c). As both Dr. Hammoud and Ms. O'Leary treated Plaintiff, the consistency of their opinions is relevant to consider, yet the ALJ failed to discuss this factor.

Moreover, both opinions indicate that Plaintiff's physical impairments, in combination with his depression and anxiety, exacerbate his mental limitations. AR 704-06, 709-11. The ALJ failed to acknowledge this or consider this in his discussion of the medical opinions. Both opinions indicate that pain and fatigue, in combination with depression, cause more severe limitations in the ability to concentrate, persist, or maintain pace, as well as in the ability to adapt or manage oneself. *Id.* 704-05, 709-10. The ALJ failed to consider these consistencies between opinions, and the ALJ failed to acknowledge or discuss the opinions that Plaintiff's pain and fatigue were exacerbating his mental impairments and limitations. This error, combined with the others discussed above, requires remand.

### B. Other Arguments

The Plaintiff makes several other arguments regarding his RFC and subjective symptoms. However, since remand is required due to the ALJ's errors in analyzing medical opinions, these issues need not be addressed at this time. The Plaintiff can address his other concerns on remand.

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 9] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on June 13, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT